1807.

Hollingsworth
vs
M'Donald

———

DECEMBER.

HOLLINGSWORTH, *et ux.* vs. M'DONALD, *et al.*

The *habendum* of a conveyance in trust, after vesting a life-estate in R P, uses the following expressions: "And from and after her decease, that T P, and his heirs, forever, shall have and possess the said land and premises; and in case of his death, without lawful issue, the said lands shall revert to, and be vested in, the said R P, and her heirs, for ever"— *Held,* that T P took a fee tail, with a reversion in fee to R P.

In a conveyance of a freehold or legal estate, technical words are appropriated by law to the creation, or limitation of particular estates; for instance, to create an estate in fee the limitation must be

APPEAL from a decree of the court of chancery *dismissing* the bill of complaint. The material facts were these.—The complainant *Rachel,* (one of the appellants,) whilst she was sole, on the 21st of September 1790, was seized in fee of the tracts of land called *Rich Neck* and *Howard's Timber Neck.* A marriage settlement took place between the complainants, on the 21st of September 1790, and *Lyde Goodwin* was appointed trustee. This settlement was as follows: "This indenture, made the 21st of September 1790, between *Jesse Hollingsworth,* of the first part, *Rachel Lyde Parkin,* of the second part, and *Lyde Goodwin,* of the third part;" and after reciting the intended marriage between the said *Jesse* and *Rachel,* stated, that the said *Jesse* granted, &c. to the said *Lyde,* and the said *Rachel,* with the consent and approbation of the said *Jesse,* granted &c. to the said *Lyde,* his heirs and assigns, all those tracts of land called *Rich Neck* and *Howard's Timber Neck,*

to J S, and his heirs, and to create a fee tail, to J S, and the heirs of his body. The words *de corpore suo,* are indispensably necessary, but may be supplied by words to the same effect, plainly designating or pointing out the body from whom the heirs inheritable are to issue or descend.

Whether the court can, and how far they are at liberty, in expounding a deed of conveyance, creating or limiting a use or trust at common law, and not united to the possession by the statute of uses, to reject the rules established by the common law, in the construction of a conveyance of a freehold estate, and to give an exposition according to the intention of the parties as in a will?

Whether a trust estate, or any but a legal estate can pass by a deed of bargain and sale?

Whether a *feme covert* can pass her real estate in any other way than by a deed of bargain and sale?

Whether a trust estate is answerable to the creditors of *cestui que trust?*

A *feme covert* cannot transfer or pass her interest in land to another, unless by fine, common recovery or deed executed and acknowledged according to the mode prescribed by the act of 1715, ch 47.

The acknowledgment of a deed by a *feme covert* grantor, held to be defective, the word "*fear*" being mitt d in the certificate of the acknowledgment, and no word of similar import or meaning substitute d in its place; but held to be cured by the act of 1807, ch. 52.

A be of adherence to the form of such certificate is not essentially requisite; and the omission of words deemed essential can be supplied by the substitution of words equipollent, or of similar import and signification.

A decree of the chancellor is subject to his controul, only upon a bill of review, or a bill in the nature of a bill of review.

A bill of review lies after the decree is signed and enrolled.

A bill in the nature of a bill of review lies after the decree is made, but before enrolment.

A decree must be considered as enrolled after it is signed by the chancellor and filed by the register.

A bill of review will only lie for two causes; Error apparent on the decree, or for some matter relevant, existing at the time of the decree, and discovered since.

A bill of review cannot be supported for matter existing at the time of the decree and discovered since, without affidavit of such matter, and the existence of it at the time of the decree, to lay a foundation for applying to the chancellor for his leave to file a bill of review, and obtaining such leave.

On petition suggesting proper matter supported by affidavit as the ground for filing a bill of review, the chancellor exercises his judgment on the propriety of interfering or meddling with his decree for the cause disclosed, and grants or rejects the application accordingly.

As to the distinction between trusts executed and executory.

"to have and to hold the said lands," &c. "unto the said *Lyde Goodwin,* his heirs and assigns, for ever. In trust nevertheless, and for the uses," &c. "That she the said *Rachel* shall have, hold, occupy, possess and enjoy, the said lands, with the rents, issues and profits thereof, for and during the natural life of the said *Rachel,* and the same convert and apply to her separate use and benefit, without any let, trouble or impediment, from the said *Jesse,* in as full and ample manner, to all intents and purposes, as if she the said *Rachel* had remained a *feme sole,* and unmar - ried; and from and after her decease, that *Thomas Parkin,* and his heirs, for ever, shall have and possess the said lands and premises; and in case of his the said *Thomas's* death, without lawful issue, the said lands and premises shall revert to, and be vested in, the said *Rachel,* and her heirs, for ever," &c. The marriage took effect, and on the 4th of January 1796 the complainants, together with *Lyde Goodwin,* executed a deed to *Thomas Parkin,* the son of the female complainant by a former marriage, which purports to convey to him an estate in fee simple in the said lands, and was acknowledged as follows: "*Baltimore* county, sct. On this 15th day of February 1796, personally appeared *Jesse Hollingsworth* and *Lyde Goodwin* before us the sub-scribers, two justices of the peace for *Baltimore* county, and severally acknowledged the aforegoing instrument of writ-ing to be their act and deed, according to the true intent and meaning thereof. At the same time came *Rachel,* the wife of the said *Jesse Hollingsworth,* and being by us pri-vately examined apart from and out of the presence and hearing of her said husband, did acknowledge the afore-going instrument of writing to be her act and deed, accord-ing to the intent and meaning thereof, and declared that she made and executed the same, and this her acknow-ledgment thereof, voluntarily and of her own free will and accord, without being induced thereto by threats of or ill usage from her said husband, or through fear of his dis-pleasure." This acknowledgment was signed by the jus-tices. *Parkin,* the grantee, died in possession of the lands in 1797, of full age, and by his will devised the same in fee to his mother, one of the complainants. Certain creditors of *Parkin* and *M'Kenna* filed a bill in the court of chan-cery against the complainants, under the devise to the mo-ther as devisee of *Parkin,* or as his heir at law, stating that

1807.

Hollingsworth
vs
M'Donald

*Parkin* died seized in fee of the lands; that they were his creditors; that *Parkin* and *M'Kenna* were insolvent, and praying a sale of the land. The complainants answered the bill, admitting *Parkin* to be seized in fee of the lands, and that he devised the same to his mother, one of the complainants. A decree for a sale took place; *S. Chase*, junior, was appointed trustee for making the sale, who made a sale of part of the lands, and made a report thereof to the chancellor, which was confirmed, by the consent of the complainants. After the sale was made; and the confirmation thereof; the complainants alleged, they had discovered that *Parkin* never was seized of the lands in fee, but that the estate in fee belonged to the complainant, *Rachel*; and that the deed from the complainants to *Parkin*, was not such a deed as passed the estate of a married woman. The *prayer* of the bill was, that the chancellor would decree the sales of the lands to be null and void, &c. and for general relief, &c.

Hanson, Chancellor, (October term 1805,) *decreed*, that the bill be dismissed, &c. From this decree the complainants appealed to this court.

The cause was argued at December term 1806, before Chase, Ch. J. Tilghman, Buchanan, Nicholson and Gantt, J.

*Key*, for the Appellants, contended, 1. That the deed of the 21st of September 1790, being a marriage settlement, vested the fee of the lands in *Goodwin*, as trustee, for the sole and separate use of Mrs. *Hollingsworth*, for life, of the rents, issues and profits thereof. 2. In trust for *Parkin*, an estate tail. 3. In trust of the remainder in fee to Mrs. *Hollingsworth*, and her heirs. 4. That no power of disposition is given by the trust deed of the lands therein mentioned. 5. That the deed of the 4th of January 1796, does not pass any estate or interest from Mrs. *Hollingsworth*. 6. That an equitable estate can no more be conveyed by a *feme covert*, unless the law is complied with, than a legal estate can, if there is no power given in the trust deed pointing out a different mode. 7. That no act done by Mrs. *Hollingsworth* does divest her estate in the lands.

On the *first*, *second*, *third*, and *fourth* points, he insisted, that the trusts created by the deed of 1790, were not

executed by the statute, and that where they were not, the terms of the trust must be governed by the intention of the grantor. That the legal effect and import, and the particular meaning and operation of that deed, created an estate tail in *Parkin*, and the lands were not answerable for his debts. To show that the words in the *habendum* of the deed created an estate tail, he cited 2 *Roll. Ab.* tit. *Grant*, 65, pl. 25. *Ibid.* 68, pl. 28. *Co. Litt.* 21, a; and *Shep. T.* 52, 75, 103, 113.

On the *fifth point*, he referred to the act of 1715, ch. 47. *Webster's Lessee vs. Hall*, 2 *Harr. & M'Henry*, 19. *Flanagan's Lessee vs. Young, Ibid* 38. *Lewis's Lessee vs. Waters*, 3 *Harr. & M'Hen.* 430. *Jacob's Lessee vs. Kraner*, 1 *Harr. & Johns.* 291. *Peddicoart's Lessee vs. Riggs, Ibid* 293. *Hawkins's Lessee vs. Burress, Ibid* 513. *The Corporation, &c. vs. Hammond, Ibid* 530. *Heath's Lessee vs. Eden, Ibid* 751; and *Greene vs. Muse & Ennalls's Lessee, (ante 62.)*

On the *sixth point*, he cited *Shep. T.* 507. *Gilb. L. of Uses*, 1, 2, 244. *Watts vs. Ball*, 1 *P. Wms.* 109. 2 *Blk. Com.* 337. *Banks vs. Sutton*, 2 *P. Wms.* 713. *North vs. Champernoon.* 2 *Chan. Ca.* 78; and *Calvert's Lessee vs. Eden*, 2 *Harr. & M'Hen.* 336.

*Harper*, for the Appellee, contended, 1. That this was substantially a bill of review, on the ground of new matter discovered, and must be so considered; and in this view of the bill, it is liable to four objections—1st. It is not in *time.* 2d. It is without affidavit or leave. *Mitf.* 84. 3d. It is not for *newly* discovered matter. *Chan. Pr.* tit. *Bill of Review. Mitf.* 84. And 4th. If this could be considered as newly discovered matter, it is still not within the rule. It must be matter which the party had previously no means of knowing. *Ibid.*

2. That Mrs. *Hollingsworth's* acknowledgment of the deed of 1796, is sufficient, the act of 1715, ch. 47, not prescribing a *formula* which must be strictly pursued. *Webster's Lessee vs. Hall*, 2 *Harr. & M'Hen.* 19. *Pattison's Lessee vs. Chew*, 1 *Harr. & Johns.* 587, *(note.) Gittings's Lessee vs. Hall*, in this court, on appeal.

3. That *Parkin*, under the deed of 1790, had a remainder in fee simple, and not in tail; and that such a limitation, applied in a deed to a legal estate, either at common law, or by way of use, would give a fee simple,

1807.

Hollingsworth
vs
M'Donald

he cited 3 *Blk. Com.* 107. *Litt. Sect.* 31. *Co. Litt.* 21, 27, b. *Abraham vs. Twigg,* Cro. *Eliz.* 478. *Idle vs. Cooke,* 2 *Ld. Raym.* 1146. 1 *Roll. Ab.* 838. *Paramour vs. Yardly,* Plow. 541. *Litt.* 258. *Turnman vs. Cooper,* Cro. *Ja.* 476. *Leigh vs. Brace,* Carth. 343. S. C. 5 *Mod.* 266. S. C. 1 *Ld. Raym.* 101. S. C. 3 *Salk.* 337. That trust estates are governed in their creation, limitation and extent, by all the same rules of construction, which apply to legal estates, he cited 2 *Blk. Com.* 337. *Shep. T.* 507. *Duke of Norfolk's* case, 3 *Chan. Ca.* 48. *Philips vs. Philips,* 1 *P. Wms.* 35. *Watts vs. Ball,* Ibid 109. *Banks vs. Sutton,* 2 *P. Wms.* 713. *Jones vs. Morgan,* 1 *Bro. Chan. Ca.* 222. *Philips vs. Bridges,* 3 *Ves. jr.* 127. *Bagshaw vs. Spencer,* 2 *Atk.* 578. *Garth vs. Baldwin,* 2 *Ves.* 646. 2 *Fonbl.* 16. 1 *Fearne,* 166, 170. *Glenorchy vs. Bosville,* Ca. temp. *Finch,* 3. *Ward vs. Bradley,* 2 *Vern.* 23. *Peacock vs. Spooner,* Ibid 195. *Dafforne vs. Goodman,* Ibid 365. *Webb vs. Webb,* 1 *P. Wms.* 132. *Theebridge vs. Kilburne,* 2 *Ves.* 237. 2 *Fearne,* 302. That admitting the acknowledgment to be ineffectual, and *Parkin* to have only an estate tail, with remainder over in fee to his mother, until the interest during her life is at end, the estate is liable for *Parkin's* debts; and that this application, if free from all other objections, is premature. He cited Lord *Hardwiche's* observations in *Pawlet vs. Delaval,* 2 *Ves.* 666.

*Martin,* in reply. 1. As to the question what estate was created by the deed of 1790, he cited *Co. Litt.* 21, a. 1 *Roll. Ab.* 838. *Turnman vs. Cooper,* Cro. Jac. 476. *Bamfield vs. Popham,* 1 *P. Wms.* 57, *(n.)* *Perkins,* sect. 173. 2. He contended that the court of chancery determines what estate passes under the trusts; and whatever interest that court determines to exist, goes as a legal estate at law. He cited 5 *Bac. Ab.* tit. *Uses & Trusts,* 308, 352, 354, 379, 386. *Gilb. Law of Uses,* 161, 162. 3. As to what is an executed, and what is an executory trust, he cited 2 *Fonbl.* 50, *(note.)* Ibid 400, *(note,* q.) 4. As to the legal effect of the deed of 1796, he referred to the act of 1715, ch. 47 *Wilson on Fines,* 20. *Nicholson's Lessee vs. Hemsley,* 3 *Harr. & M'Hen.* 409; and *Sonday's* Case, 9 *Coke,* 127. 5. That if a *feme covert* holds a separate estate under a marriage settlement, she cannot

convey in any other mode than that prescribed by law, where there is none pointed out in the marriage settlement. He cited 2 *Bac. Ab.* tit. *Curtesy. Hearle vs. Greenbank,* 3 *Atk.* 695. S. C. 1 *Ves.* 298. *Roberts vs. Dixwell,* 1 *Atk.* 607. 6. Whether the appellants have a right to bring the present bill, if considered as a bill of review upon discovery of new facts, or as an original bill, he cited *Mitf.* 35, 74. 1 *Harr. Chan. Pr.* 306. *Hind's Pr.* 38. *Anonymous,* 3 *Atk.* 17. *Norris vs. Le Neve, Ibid* 26, 35, 38. *Curia adv. vult.*

1807.

Hollingsworth
vs
McDonald

At the present term the opinion of the court was delivered by

CHASE, Ch. J. In this case, the first question to be decided by the court is, what estate vested in *Thomas Parkin,* in the land in question, under and in virtue of the deed from *Jesse Hollingsworth,* and *Rachel Lyde Parkin,* to *Lyde Goodwin,* executed on the 21st of September 1790?

The question aries on the following words in the *habendum* of the deed: "And from and after her decease, that *Thomas Parkin,* and *his heirs, for ever,* shall have and possess the said lands and premises; and in case of his the said *Thomas's death without lawful issue,* the said lands shall revert to and be vested in the said *Rachel,* and her heirs, for ever."

It is admitted that *Lyde Goodwin,* under this deed, took a fee simple in the lands in question, in trust for *Rachel Parkin,* during her life, and that the words before recited, would in a will create an estate tail in *Thomas Parkin;* but it is objected that those words in a deed will not create an estate tail, and that a fee simple passed to *Thomas Parkin.*

It is without doubt that the above words in a will would give a fee tail, because no technical words being necessary to create such estate. The intention expressed by the words of the testator must prevail if not inconsistent with some rule or principle of law; and the intention is plain here that *Thomas Parkin* was to take a fee tail.

In a deed or conveyance of a freehold or legal estate, technical words are appropriated by law to the creation or limitation of particular estates; for instance, to create an estate in fee, the limitation must be to *J. S.* and his heirs, and to create a fee tail, to *J. S.* and the heirs of his body.

It is established that the words *de corpore suo* are not indispensably necessary, but may be supplied by words equipollent or tantamount, plainly designating or pointing out the body from whom the heirs inheritable are to issue or descend.

In this case the limitation is to *Thomas Parkin*, and his heirs, and in case of his death without lawful issue, to revert to *Rachel Parkin*, and her heirs. These words are comprehended in one sentence, and contain the two requisites necessary to constitute an estate tail. The subsequent words, "in case of his death without lawful issue," qualify and restrain the generality of the precedent expressions, (to *Thomas Parkin*, and his heirs,) and point out, unequivocally and plainly, the heirs intended to inherit, and confine them to heirs of his body. *Thomas Parkin* could not die without heirs, as long as he had lawful issue; and in this case the words lawful issue, heirs of his body, and issue of his body, as words of limitation, expressive of the quality of the estate to be granted, are of the same import and signification, and necessarily designate the heirs intended to inherit, and do convert the fee simple created by the first words, into a fee tail; for *Thomas Parkin* could not have issue, or lawful issue, but of his body.

The court being of opinion, that an estate tail vested in *Thomas Parkin*, with the reversion in fee to *Rachel Lyde Parkin*, under the deed; and being also of opinion, that the said words, in a conveyance of a freehold estate, would create a fee tail, it becomes unnecessary to decide the question, so ably and learnedly discussed by the counsel, how far the court is at liberty, in expounding a deed of conveyance creating or limiting an use or trust at common law, and not united to the possession by the statute of uses, to reject the rules established by the common law, in the construction of a conveyance of a freehold estate, and to give an exposition according to the intention of the parties, as in a will.

It is also unnecessary to decide on the nice and refined distinctions between trusts executed and executory; and the court give no opinion on those questions.

*As to the operation of the deed of* 1796. It is unquestionable that a *feme covert* cannot transfer or pass her interest in land to another, unless by fine, common recovery, or deed executed and acknowledged according to the mode

1807.

Hollingsworth
vs
M'Donald

prescribed by the act of 1715; and the question to be de-
cided by the court is, whether the acknowledgment of the
deed by Mrs. *Hollingsworth* is conformable to the said
mode, and effectual to render the deed operative in law to
convey her interest in the lands in dispute to her son *Tho-
mas Parkin?*

The court are of opinion, that the acknowledgment is.
substantially defective, the word "fear" being omitted in
the certificate of the acknowledgment, and no word of si-
milar import or meaning substituted in its place.   The
word *fear*, in that part of the certificate, means a particu-
lar specific kind of fear, and signifies that she makes her
acknowledgment without being induced thereto by *fear of
ill-usage* by her husband.   The true and genuine meaning
of the words, "without being induced thereto by fear or
threats of, or ill-usage by, her husband," being fear of ill-
usage, threats of ill-usage, or actual ill-usage.

The court, in thus giving their opinion, do not decide
that a literal adherence to the form of the certificate is es-
sentially requisite, and that the omission of words deemed
essential, cannot be supplied by the substitution of words
equipollent, or of similar import and signification.  But
the court are of opinion, that the deed is rendered valid
and effectual to pass the land mentioned therein, to *Thomas
Parkin*, in fee simple, by the act of assembly, entitled,
"An act for quieting possessions, and securing and confirm-
ing the estates of purchasers," passed at *November* sessi-
on 1807, *ch*. 52, it appearing by the certificate of the ac-
knowledgment of *Rachel Hollingsworth*, that she made
her acknowledgment privately and willingly, out of the
presence and hearing of her husband.

*As to the question, whether the present bill can be sus-
tained?*

The decree of the chancellor is subject to his control,
only upon a bill of review, or a bill in the nature of a bill
of review.

A bill of review lies after the decree is signed and en-
rolled.

A bill in the nature of a bill of review lies after the de-
cree is made, but before enrolment.

A decree must be considered as enrolled, after it is sign-
ed by the chancellor, and filed by the register.

A bill of review will only lie for two causes—Error apparent on the decree, or for some matter relevant, existing at the time of the decree, and discovered since. Nothing appears on the proceedings on the first bill to support the position that there is error apparent on the decree, the deeds not being made a part of the proceedings.

It cannot be supported for matter existing at the time of the decree, and discovered since, without affidavit of such matter, and the existence of it at the time of the decree, to lay the foundation for applying to the chancellor, for his leave to file a bill of review, and obtaining such leave.

On petition suggesting such matter, supported by affidavit as the ground for filing a bill of review, the chancellor exercises his judgment on the propriety of interfering or meddling with his decree, for the cause disclosed, and grants or rejects the application accordingly. These requisites, for laying the foundation for the present bill, not having been complied with, the court are of opinion, that the decree of the chancellor, dismissing the bill, be affirmed, with costs to the appellee.

DECREE AFFIRMED.