Johnson, Chancellor.(b)
In this cause the defendant being returned attached for not appearing to the bill of complaint filed by the complainants; and the said defendant not having appeared, upon motion of the complainants by their solicitor; it is this 30th day of March, 1824, ordered, that the said defendant, either in person or by his solicitor, put in a good and sufficient answer to each interrogatory contained in the bill, or a plea or demurrer to the same, on or before the 4th day of July term next of this court, or otherwise the Chancellor, Upon application of the complainants, and at discretion, will either take the bill pro confesso, or direct a commission to issue for taking depositions, and will finally decree as to him shall seem meet and consistent with the established principles of equity, in the same manner as if the said defendant had appeared and depositions had been taken in the usual way. Provided a copy of this order be served on the said defendant, or left at his usual place of abode, before the 20th day of June next.
After which, this order having been returned served, the cas.e was brought before the court for further proceeding.
8th. July, 1825. — Bland, Chancellor. — The bill having been taken pro confesso, on motion of the complainants’ counsel, it is ordered, that a commission issue to Zadock Magruder of Montgomery county in this State, and also to John A. Smith, of the city of Washington, to take testimony in the cause.
The commission to Smith was returned with- testimony, and filed on the 3d of August, 1825, and that to Magruder was returned with proofs and filed on the next day.
*115 4th August, 1825. — Bland, Chancellor. — Ordered, that this case be, and the same is hereby referred to the auditor, with directions to state an account from the proceedings, shewing the hires of the said negroes, with which the said late Kinsey Gittings was chargeable, from the time they came into his possession and were demanded of him, until they were sold by his administrator, and the -amount of sales of said negroes, and the interest thereon from that time.
The auditor on the same day made a report, in which he says, that he had stated an “ account shewing the amount of sales of the negroes, and the interest thereon from the time they were sold; but that he finds nothing in the proceedings from which he can state an account shewing the hire of the said negroes, with which Kinsey Gittings was chargeable from the time they came into his possession and were demanded of him, until they were sold by the defendant as his administrator.” Upon which the case was immediately submitted without argument.
4th August, 1825. — Bland, Chancellor. — Decreed, that the report of the auditor be confirmed, and that the defendant, William Scoff,' forthwith pay to the complainants, or bring into this court to be paid to them, the sum of $4006 15, with interest on $2850, part thereof, from the fourth day of- August, 1825, until paid or brought in as aforesaid.
On the 22d of September, 1825, the plaintiffs, by their petition, applied for a fieri facias, which was immediately ordered and issued to the sheriff of Montgomery county, which writ was endorsed thus, “ complainants release Doll. 392 90½.”
On the 15th of November, 1825, William Scott, together with Berry Gittings, Michael Gittings, Richard Gittings, Safah Git-tings, an infant by her guardian and next friend, and Jeremiah Gittings, also an infant by his guardian and next friend, filed a bill, which they style, “ their supplemental bill in the nature of a bill of review,” in which they recite all the proceedings in the before mentioned case.
They state and object to those proceedings and the decree thereupon, that under the commission to Smith, three witnesses were examined, who “ according to the tenor of the return were no otherwise sworn, but severally and respectively to depose and testify according to the best of their knowledge and belief, and are *116 not authenticated by the signature of the witnesses;” that by the return of the commission to Magruder, it appears that one witness was examined, not on oath, but on affirmation, neither the form, nor the terms of which are set forth, nor has the witness signed his deposition; that this plaintiff, William Scott, is the administrator of the late Kinsey Gittings, and the other plaintiffs are his children and next of kin, who as such Eire the persons really and exclusively interested in the matter in controversy, and ought to have been made parties to the suit, in which the decree of the 4th of August, 1825, was passed. -Instead of which this plaintiff, William Scott, alone was made defendant and charged by the decree, in that ease, in his own proper person, although he could.only be held liable, if at all, as administrator of the lateTCmsey Gittings, being as such no more than a trustee for his creditors and next of kin.
They further state, that, from certain judicial proceedings and other circumstances, it appeared, that this plaintiff, William Scott, was entitled to various credits, which had not been, given, and an ex parte decree had been obtained by Thomas Burch, and others, in that case, for a sum greatly exceeding their just due, by their fraudulently concealing the. proper sets off and deductions, some of which they had ah along admitted, and others were clear and indisputable.
And they further state, that this plaintiff, William Scott, was frequently, and contrary to his anticipations and expectations, disappointed in having, the business put in train for a decision; he at length became so anxious and uneasy on the subject, that, hearing of his counsel being, in attendance at the Court of Appeals at Annapolis, at the June term of 1824, he came i.from his home in Montgomery to Annapolis, for the express and only purpose of having an interview with his counsel, and getting his answer drawn, and filed, &c. But he found his counsel on the eve of returning to Washington, whither he accompanied him, and immediately on their arrival, the answer was drawn, regularly sworn to, and put into the hands of his counsel, to be transmitted by the stage next morning, to the register of this court; that he had frequent interviews afterwards with' his counsel on the subject; he as well as his counsel, took it for granted, the answer and exhibits had been duly received; and he was informed by his counsel, that he had made an arrangement with Mr. Key, one of the opposite counsel, who resided in Georgetown, to fix upon some day convenient for them both, to go to Annapolis and argue the cause; and *117 this plaintiff, William Scott, remained under this impression, without the slightest intimation of the answer’s having miscarried, till, to his utter astonishment, he found there had been a decree against him, .followed by execution: and when he communicated to his counsel the fact of his property having been seized by the sheriff, he was utterly at a loss to comprehend how it could have been brought about; having only heard, a short time before, of the miscarriage of the answer,, and nof dreaming that there could have been a decree, till writing to the register of this court for information, he was certified of the fact.
Walter Jones, the counsel of William Scott, in an affidavit made by him and filed with this bill, confirms what is stated by Scott, as to his being called on at Annapolis, and followed to Washington, where he states, that Scott remained with him until he had drawn his answer, and it was sworn to by him, before a magistrate; — that finding the package so large as to make the transmission of it by mail very expensive, he, Jones, sent his servant to the stage office to inquire whether there were any passengers for Annapolis in the stage of the next day'; who returned with an answer, that he had fojind a gentleman vdio would take charge'of the packet; upon which he delivered it to him very securely sealed up, and directed to the Register of the Court of Chancery at Annapolis; with a note, requesting him to file the answer, &c., and enter a notice to dissolve. He does not recollect that his servant named thé person to whom he delivered the packet; if he did, he has forgotten it. He had frequent conversations afterwards with Mr. Key, about appointing a day mutually convenient for them both, to go to Annapolis to argue the cause. He rested without doubt or apprehension of the answer’s being regularly filed, and does not remember when he experienced so great a surprise, as when he heard of the decree in the cause.
These plaintiffs, by this bill, pray, that this plaintiff, William Scott, may be permitted to put in his original answer, plea, &c. to the original bill, &c., and that these other plaintiffs may be admitted as parties to the proceedings, as they are parties in interest, and'to answer and defend, &c.; that the case may be heard upon all and singular the allegations, matters and things in this their supplemental bill, in the nature of a bill of review, alleged and contained, at the same time, that it- is re-heard upon the original bill; that these plaintiffs may be restored to their original situations respectively, before the issuing of the commission and the making of the *118 said decree; that the said decree may, by the order of this court, be opened for such re-hearing; that the execution of the same may be suspended, and the said fieri facias countermanded by the like order of this court; and that in general they may be relieved according to the equity and nature of their case, &c. And in conclusion, a prayer for subpoena against the plaintiffs to the original bill, See., and an order of publication against those of them who are non-residents.
16ft November, 1825. — Bland, Chancellor.- — On healing the complainant’s counsel, and considering the aforegoing bill, together with the affidavit of the complainant’s counsel therewith filed; and the said William Scott having filed his bond with surety, approved by the Chancellor, to abide by, and fulfil the order of this court in the premises : — it is ordered, that subpoenas issue, and publication be made, as prayed by the said bill. And it is further ordered, that all further proceedings, in execution of the said decree of this court, of the fourth day of August last, be, and the same are hereby enjoined, suspended and countermanded, until the further order of this court, as prayed by the foregoing bill.
On the 3d May, 1826, tire defendants, Thomas Burch and others, filed their answers, in which they admit, that their counsel had been informed, shortly after the serving of the order of the 30th March, 1824, that William Scott had filed his answer, and that it had been proposed, that a day should be fixed on to go to Annapolis to try the cause; that their counsel wrote for a copy of Scott’s answer, and was informed that it had not been filed, which information he communicated shortly afterwards, to Mr. Jones, the counsel of Mr. Scott; that the same fact was again, after a considerable interval, communicated to Mr. Jones, and also to William Scott himself. And they further admit, “ that there ought to have been a credit entered for the sums mentioned in the decree of the Orphans Court of Washington county, and which were to be returned to Kinsey Gittings, on his giving up the property; or rather, that the defendants were willing to admit a credit for those sums, though, as they were tendered to Gittings in his lifetime, and also to Scott, since his death, when the negroes were demanded of him, and compliance with the said. Orphans Court’s decree required, and they refused then to receive the same and give up the negroes, and have since put the defendants to very great expense in recovering their claim, they might well have been justi *119 fied in refusing to allow such credit. And they state, that a credit for $392 90, the amount of those two sums, and interest upon them, was endorsed on the fieri facias, issued on the said decree, and the balance only was required to be made by the said execution, which balance they aver they are justly entitled to, and that no other deduction or discount ought to be allowed against the amount of the claim, as stated in the said decree.” And they further deny all fraud, &c., as alleged .in the bill, &c.
These defendants, Thomas Burch and others, by their petition allege, that the plaintiffs, William Scott and others, had issued no subpoenas, nor applied for' any order of publication against these defendants, who are nonresidents, as prayed by .their bill; that they, on learning that such a bill had been filed, have answered thereto; and now pray, that the order of the 16th November, 1825, may be revoked.
4th May, 1826. — Bland, Cliancellor.^-On the foregoing application it is ordered, that -the order of the 16th of November last be dissolved and revoked, unless cause to the contrary be shewn on the fourth day of the next term. Provided a copy of this order, together with a copy of the foregoing petition, be served on the complainants or their solicitor, on or before the first day of June next.
A copy of this order having been served as required, the case was afterwards brought before the court for its determination.
25th July, 1826. — Bland, Chancellor. — -This case standing ready for hearing, on the notice given in pursuance of the order of the 4th of May last, and the solicitors of 'the parties having been fully heard, the proceedings were read and' considered.
The Chancellor feels every disposition to relieve this case from all embarrassing forms, and to reach its merits, if practicable. It will, therefore, be necessary to disengage the complainants’ substantial equity and object from the forms with which they have been clothed; and to examine their bill with a due regard to their equity and object. The substance of their complaint is, that a decree has been obtained against one, which materially affects all of them, erroneously; by fraud; by surprise; for much more than is due; or, to say the least, improperly and to the exclusion of a good and available defence.' And upon the truth of these allegations, they ground their equity to have the decree of the 4th of August last set aside, their undenied credits allowed, their defence let in, and the matters in *120 controversy heard upon the merits. This is the object, and the mode chosen by them to attain it, is, by what they call “ a supplemental bill, in the nature of a bill of review.” Whatever may be the cause of complaint, the party asking relief must conform, at least in substance, to prescribed rules as to time and manner.
It has been the long established usage and law of the Court of Chancery, to consider all its orders and decrees, as completely within its control and open to be altered, revised, or revoked during the whole term at which they are passed, on motion or by petition. But, if the term is suffered-to elapse, the party can only obtain relief by original bill, or by a bill of review, (a) This law of this court is analogous to that -which has been adopted by the courts of common law; and which has been found alike salutary in both. It is believed there is no decision of the Court of Appeals, which has directly or distinctly restricted or altered this rule of the Court of Chancery. But in this case, the,bill of these plaintiffs was Hot filed until long after the close of 'the term at which the decree was signed. It cannot, therefore, be considered as entitled to the same indulgence, or as standing altogether on the footing of a petition, for a re-hearing, or alteration, or opening of a decree, filed during the term at which the decree was signed.
This bill charges, that the decree of the 4th of August last was obtained by fraud. It is the peculiar province of this court to grant relief in all cases against fraud and accident, not within reach of the courts of common law; and a decree obtained without making those parties, whose rights are affected by it, is, as to them, fraudulent.(b) And there can be no case of fraud, in which it would be more fit and proper for this court to interfere, than upon a charge, that its own decree had been obtained by fraud. Such a case is, however, brought before the court, not by a bill of review, but by an original bill.(c) And in that light, the allegations of this bill require the- court, in some respects to consider it.
In the Court of Chancery of England, the Chancellor, it seems, after the hearing, pronounces the substance of his decree orally, (d) minutes of which are taken down by the register, who afterwards draws them out into the form of a decretal order; arid if, in doing so, any mistake should occur, the execution of the' order may be *121 stayed awhile, until it can be corrected by motion in court. As thus drawn up, this judgment of the court is always called its “ decretal order.” But it has the force only of an interlocutory order; and is not a perfect, complete, and final decree before enrolment; for, till then the Chancellor may re-hear, alter, or revise it. The proper officer draws up the form of the decree for enrolment, from the decretal order, reciting all the pleadings, &c.; after which a fair copy is made upon parchment, and signed by the Chancellor. It is then, and not until then, an enrolled and final decree. The interval of time suffered to elapse; between the making of the decretal order, and the enrolment, is seldom less than a month, often more, and in some cases exceeds a whole year. But in this interval the decretal order is so far considered as a final decree, that it maybe enforced by attachment.(e)
The Court of Appeals have declared, that “ the decree of the Chancellor is subject to his control, only upon a bill of review, or a bill in the nature of a bill of review. A bill of review lies after the decree is signed and enrolled. A bill in the nature of a bill of review lies after the decree is made, but before enrolment. A decree must be considered, as enrolled, after it is signed by the Chancellor, and filed by the register.” (f) But the Chancellor rarely, if ever, pronounces his decree orally, as in England, or if he does do so in any case, no minutes of it are taken down. He is considered as having pronounced no judgment; nor as having made any decision in the cause, until a decree is drawn up in writing, in full and proper form, and signed by him. That decretal order, which, in England, always precedes the enrolled or final decree, is never made here, and is unknown to our practice. But in England the phrase “ decretal order,” is often applied to various other orders besides that which immediately precedes the decree; and it is sometimes applied in the same sense here.
The plaintiffs have styled this bill, “ their supplemental bill, in the nature of a bill of review.”(g) But one of them was the defendant, and the others were no parties to the original bill, upon which the decree complained of, had been passed; and it is attached, as an addition, to no other bill; nor does it purport to supply the *122 defects of any original bill. It is, therefore, in no sense, properly and alone, a supplemental bill.(h)
In England, a bill of review can only come in after the decree has been perfected and enrolled. But if the party discover any error, or new matter of fact after the decree has been pronounced, and before it has been enrolled, he may obtain relief by a bill in the nature of a bill of review; and need not wait, or go to the expense of having the decree enrolled. Now, from what the Court of Appeals have said, as we have seen, it clearly follows, that, in this State, there can be no .such thing as a bill, in the nature of a bill of review: since all decrees here' are made by being signed and filed; and when so made, are to be considered as decrees enrolled. Most clearly such a bill cannot be resorted to in this case.
A bill of review, properly so called, lies against those who were parties to the original bill, and against them only; and must be either for error apparent on the face of the decree, or for some new matter, (i) But before a bill of review, for newly discovered matter, can be filed, the parly must petition for leave to do so; setting forth the new matter, strongly sustaining his statement by affidavits ; upon which the leave of the court is granted. In this case there has been no petition, setting forth newly discovered matter, nor any leave given to file such a bill. This bill, therefore, can, in no respect whatever, be considered as a bill of review, grounded on the discovery of new matter.
A bill of review for error apparent on the face of the decree, may be filed without asking, or obtaining the leave of the court; and it may be brought by either of the parties to the original bill alone; or it may be filed by a person not a party to the original decree, but whose- rights are injured by it. Such is the case now before this court. The bill of these plaintiffs has this character; and more.
This bill has yet another aspect. It alleges, that the plaintiffs, one of whom was a party to the original suit, had a good and available defence; that all of them should have been made parties; that they have, all of them, an interest which they will be able to maintain and prove; and that the decree of the 4th of August last was obtained by surprise, for a greater amount than was actually *123 due; or owing to a kind of negligence for which-they are not at all blamable, or for which they may, at least, be excused. Upon these grounds they pray to have the decree opened and the cause re-heard. According to the English authorities, if the enrolment of a decree be obtained by surprise, or irregularly, it may be opened; provided, the application be made within a reasonable, time. And where the merits of the case had not been entered into, an enrolled decree has been set aside upon special circumstances, notwithstanding the proceedings were strictly régular. For a court of equity will make every effort, within its power, to reach the merits of the case, and have justice done.(j)
This bill, then, divested of all extraneous matter, maybe regarded in three distinct characters: - first, as an original bill, to have the decree of the 4th of August last reversed on the ground of fraud, because it injuriously affects the interests of some of these complainants who were not.parties to it; secondly, as a bill of review for error apparent on the face of the decree; and thirdly, as a bill, grounded on the peculiar circumstances, asking to have the decree by default set aside, and the case re-heard upon the merits.
It was in these characters, that it presented itself to the mind of the Chancellor, when it was first laid before him. He then felt, as he still does, a strong impression, that these different characters and alternative aspects, and prayers, were so entirely incompatible, as to be incapable of being blended together in the same bill:(k) but he conceived, that if it could be sustained in all, or any of them, the parties complaining would be entitled to relief. And, under this impression, it seemed to him fit and proper, to suspend, at least for a Season, the execution of the decree, until these matters could be more carefully canvassed, and both parties could be heard. And therefore it was, that he passed the order of the 16th of November last; which operated as an injunction, and was intended so to operate. (l)
*124 But in the course of the argument, the one party seemed to construe this order as a total revocation of the decree of the 4th of *125 August last; and the other, as a mere stay 'of execution, because of some credits not having been given. It was also urged, that the allowing of such a bill of review to be filed, did, of itself, operate a suspension of all further proceedings, until the final hearing ; and that it must be so understood, when taken in connexion with the prayer of the bill, and the circumstances of a bond having been required and accepted. The Chancellor has been misunderstood.
According to the English law, neither the filing of a petition for re-hearing; nor a bill in the nature of a bill of review; nor a bill of review for error apparent on the face of the decree; nor a bill of review for new matter, after leave given ;(m) ‘nor an original bill, to set aside a decree on the ground of fraud; nor a bill to open an enrolled decree, and let in the merits, has ever, or under any circumstances been considered, in itself, as a suspension of the execution óf a decree. The party having the decree, in all such cases, is allowed to proceed, unless specially and expressly restrained ; which is never done but on the sum decreed being brought into court, or on good security being given. Similar law and practice has been long established here; and, hence it was, that the Chancellor required a bqnd with approved surety, to be filed before he imposed the restriction or injunction, expressed in the order of the 16th of November last.(n)
If, on considering this bill in its third character, there should be found sufficient cause for opening the decree, and having the case re-heard upon its merits, it will be mofit advantageous to all parties, that it should be done now: And it will be unnecessary to inquire, and express an opinion, whether the three characters of this bill *126 are not incompatible, particularly as no objection to it has been made on that ground; or whether the decree has been obtained by fraud or not; or is erroneous upon its face. The decree of the 4th of August last, now complained of, was obtained in that suit by the default of the defendant, in not filing his answer within the time prescribed by the rules of the court. This apparent negligence the present plaintiffs, by their bill, have endeavoured to account for, to justify, or to excuse. And whether they have done so or not, is the matter..now to be ascertained: if they have, this decree must be opened.
The decree was signed as of July term; and, as has been observed before, all decrees and orders of the court being held entirely subject to its control during the term, if an answer had come in at any time previous to the close of that term, the decree by default would have been set aside, and the defence let in.(o) No decree by default, under the rule, will be signed until after the first four days of the term; but after that an answer may be filed, and the decree rescinded, at any time before the first day of the next succeeding term.(p) On turning to the proceedings, in the origi *127 nal case, it appears, that there had been a return against Scott, the defendant, attached for not appearing; in consequence of which, on the 30th of March, 1824, the usual' order nisi was passed, requiring him to appear and answer by the fourth day of the next July term, which commenced on the thirteenth, and closed on the twenty-fourth day of the same month. Therefore, at any time after the 17th day of July, 1824, the parties might have obtained the decree, which was signed on the 4th of August, 1825.
That they did not obtain it sooner can only be imputed to their own misunderstanding, negligence, or indulgence; because, the court, on application, would have inspected the proceedings, and have done on the next day, after that day, precisely that which it did, when called upon one year after. The plaintiffs in that case, then, owning to their own negligence or indulgence, stood in no better situation at the July term, 1825, than they did at the July *128 term, 1824; because, their decree by default, according to the established practice, was liable to be corrected or revoked during the term at which it was signed. The July term, 1825, commenced on the 12th of that month, and was not finally closed until the 17th of August following. Consequently, the, decree was not final and absolute until that day. After which it could only be opened or affected by an original bill, or a bill of review. The bill to set aside this decree was-not filed until the 15th day of November, 1825; and Scott, one of the plaintiffs here, was not charged, on the record of the original case, with a default, which might have been fixed' upon him by a decree, until the 18th day of July, 1824, making a space of about fifteen months of apparent negligence, which is to be accounted for, justified, or excused. To find which, we must examine the bill and answer in this case.
That the defendant, Scott, in the month of July, 1824, and before he could have been finally fixed with a decree by default, had made an answer, which was ready to be put on file; that he had charged his solicitor with the care of it, who had attempted to forward it to the register, to be put on file; are facts proved and not denied. It also appears, that under a firm belief that his answer had reached its destination, and was on file, his solicitor proposed to the solicitor of the plaintiff, to agree upon some day when the cause should be argued by them. The defendant in this case, Thomas Burch, in his answer, states, 'that thereupon his counsel wrote for a copy of Scott’s answer, and was informed that it had not been filed; which information was shortly afterwards communicated to Scott’s counsel; which after a considerable interval was again mentioned to him. And it is expressly charged, that Scott himself knew the fact before the decree was signed. That Scott’s solicitor was very negligent is most manifest. But it does not clearly appear, that Scott, himself, is chargeable with negligence to a greater extent than about four or five months;' for it is not said by Burch, in his answer, how long it was before the date of the -decree, that Scott was informed his answer had not been filed: but it would seem, that the counsel for the plaintiffs in that case, to be assured of the fact whether Scott’s answer was filed of not, inquired for it, and searched the papers so late as about the first of July, 1825. (q)
*129 It is admitted by the defendants, that the decree of the 4th of August last is for a greater amount than' it ought to have been, given for; and that it has awarded to them three hundred and ninety-two dollars and ninety cents more than was actually due, and more than they had any right whatever to claim or recover. In this respect, therefore, it confessedly requires revision and correction. It is a decree by default, and not upon the merits. But Scott avers upon oath, that he has a good' defence against the whole claim of the defendants, which he prays to have let in.(r) And it is not alleged by his opponents, that they have lost, or been deprived of any means of sustaining their pretensions, (s) In short, under all the peculiar circumstances of this case, it appears to be fit and proper, that the decree of the 4th of August last should be revoked; but it must be upon the terms of paying all costs, (t)
Whereupon, it is decreed, that the decree of this court, passed and signed on the 4th day of August, 1825, in the case wherein Thomas Burch, administrator de bonis non of Jesse Burch, Fielder Burch, and others, are plaintiffs, against William Scott, defendant, together with all the proceedings in the said suit subsequent to the fourth day of July term, 1824, be and the same are hereby revoked, rescinded, and annulled. And it is further decreed, that the said William Scott do forthwith pay unto the complainants all the costs which they may have incurred in the prosecution of the said suit subsequent to the 4th day of July term, 1824, to be taxed by the register. And it is further decreed, that the answer of the said Scott, purporting to have been received and filed on the 7th of December, 1825, in the said case, be and the same is hereby allowed to be filed as his answer in the said suit, subject to all legal exceptions thereto.
From this decree the plaintiffs in the original bill appealed, and the Court of Appeals having reversed this decree without qualification, (1 G. & J. 393,) the plaintiffs again sued out a fieri facias upon the decree of the 4th of August, 1825, on which execution, it is understood, that the plaintiffs, as before, endorsed a credit for so much as they admitted had been awarded to them more than was due.

 The terms and form of this order were adjusted, by Chancellor Hanson, according to the provisions of the act of 1799, ch. 79, s. 2; in the case of Walsh & others v. Delassere & others, 19th February, 1800, and it has been followed ever since.

 Mussel v. Morgan, 3 Bro. C. C. 74; Cameron v. McRoberts, 3 Wheat. 591.

 Giffard v. Hort, 1 Scho. & Lefr. 386.

 1 Mont. Dig. 345.

 Kennedy v. Daly, 1 Scho. & Lefr. 384; Giffard v. Hort, 1 Scho. & Lefr. 396.

 Gilb. For. Rom. 162; 1 Harr. Pr. Chan. 77, 620; 2 Harr. Pr. Chan. 174; 2 Mad. Chan. 464; 2 Fow. Ex. Pra. 164.

 Hollingsworth v. McDonald, 2 H. & J. 237; Beams’ Ord. 1; Digger's lessee v. Beale, 1 H. & McH. 71.

 1 Mont Dig. 318.

 1 Mont. Dig. 315; 2 Mad. Chan. 519; 1 Fow. Ex. Pra. 61.

 1 Mont. Dig. 330; 2 Mad. Chan. 537.

 Kemp v. Squire, 1 Ves. 206; 2 Mad. Chan. 465.

 Perry v. Phelips, 17 Ves. 176.

 Restrictive orders, staying the execution of the court’s own decree, so common in England, have always there, Edin. Inj. 209, as here, been considered as injunctions, and been treated accordingly, Norwood v. Norwood, M.S. 1808.
Clapham v. Thompson. — This was a bill to account, &c., filed on the 22d of September, 1787, praying for relief; and also for an injunction to stay a sale under a fieri facias from this court. Upon which was passed the following order.
22d September, 1787. — Rogers, Chancellor. — On the bill of complaint exhibited in this court by Josias Clapham and Mary Carey, against Cornelius Thompson, John *124 Thompson, and Ann McDonald — it is ordered by the Chancellor, according to the prayer of the said hill, that the sales of the property of the said Josias Clapham and Mary Careyj taken by the sheriff of Frederick county, by virtue of a fieri facias issued from this court in the names of Cornelius Thompson, John Thompson, Angus McDonald and Ann his wife, against the lands and chattels of the said Josias Clap-ham and Mary Carey, and advertised for sale on the twenty-fifth instant, be stayed j and that the sheriff of Frederick county forbear and desist from making any sale of the said property, or any part thereof, until further order of the Chancery Court. And it is further ordered, that the depositions of witnesses, taken before a single magistrate, be received in evidence in this cause, upon giving five days’ notice to the adverse party.
Some time after which, the depositions of sundry witnesses having been taken, the case was again brought before the court.
June, 1789. — Rogers, Chancellor. — Ordered, that an account be stated and taken between the parties; and that commission issue to Randolph B.-Latimer and Robert Denny, as auditors, to state and take the said account; and .that the said auditors apply to this court for instructions in adjusting the said account, as occasion may require.*
And the cause so standing continued until December court, seventeen hundred and eighty-nine, a commission issued to the said audites to state, settle, and adjust the said account. The commission, with "certain annexed accounts, were afterwards returned to the court here, and are contained in the words and figures following, to wit:—
“ Maryland, sct. — The State of Maryland to Randolph B. Latimer and Robert Denny, Esquires, of Ann Arundel county, Greeting: — Know ye, that we have appointed you to be our commissioners to audite, state, settle, and adjust all accounts in a certain cause depending in our Court of Chancery, between Josias Clapham and Mary Carey, complainants, and Cornelius Thompson, John Thompson, and Anne McDonald, defendants: We therefore require you to state, audite, settle and adjust all accounts relating to the matters in dispute that shall he produced .to you, by either of the parties; and that you reduce to writing such accounts as shall he stated and settled by you, and the same you send, together with this our commission, under your hands and seals, with all convenient speed, to our High Court of Chancery. — Witness the Honourable Alexander Contee Hanson, Esq., Chancellor, this second day of February, Anno Domini 1790.
Samuel H. Howard, Reg. Cur. Can.
Under and with this commission, the audites stated and returned an account. And the cause so standing continued until May court, one thousand seven hundred and ninety, it was ordered'that the following entry be made, to wit: — Notice of motion to confirm tire auditors’ return, and dissolve the injunction nisi the thirteenth day of July next.
After which, there being no exceptions filed to the auditors’ return, on the 17th August, 1790, decreed, that the auditors’ return be confirmed; that the injunction order be dissolved; and that the defendants be permitted to proceed on their fieri facias for a certain amount. — Chancery Proceedings, Letter D., 1790, pages 424, 483.

 In cases of payments made in bills of credit, it was declared, that the Chancellor might appoint his register or other person to state and adjust the claims, and to strike the balance. June, 1780. ch. 8, s. 17.

 Mitf. Pl. 88.

 Mitf. Pl. 89.
Carroll v. Parran. — February, 1733. — Bill of review — subpcma issued. — Upon motion of the defendant’s counsel, that the bill be dismissed— m-dered, that the said bill be dismissed with costs; leave not being given either by petition or motion to' file such bill of review.
Daniel Dulany, on behalf of Charles Carroll, moves the court, that he may have leave to file a bill of review against Parran, and that a bond with good security, payable to John Parran, may be lodged in court by the said Carroll to stay execution of the same decree. — Ordered, that a bill of review be filed, and that no execution issue upon the former decree.
Upon motion of Samuel Young, of counsel with the defendant, — Ordered, that he have leave given to answer until next court. — Chancery Records, Lib. I. R. No. 2, pages 543, 643.

 When this opinion was delivered there were, as it appears there had always been, four regular terms of this court, in each year, for the return of process, &c. But the continuance of the sittings, which in this and all other similar cases, is spoken of as the term., was irregular and indefinite. When it was presumed, that all tire cases, ready for hearing, had been called up, the sittings, or as they have been most usually called, the terms, were closed, by a memorandum to that effect entered upon the docket, by order of the Chancellor. This was attended with inconvenience ; for although the Court of Chancery has terms, it is not, in the sense of the common law, a term court; but is always open, (1 Rep. Ca. Chan. Earl of Oxford’s case, 6. Crowley’s case, 2 Swan, 11.) I therefore deemed it proper, that the rules might be better understood and enforced, and lor the despatch of business, to fix by the rule of the 28th of April, 1827, the close as well as the commencement of the sittings of each term.

 Clapham v. Clapham. — This was a hill filed on the 9th January, 1810, to foreclose a mortgage and have tire property sold. It stated, that the defendant was not a resident within the State, and prayed publication, which was ordered and made.
4th October, 1810. — Kilty, Chancellor.- — Upon the argument that took place at the present term, respecting the above suit, the Chancellor is of opinion, that it comes within the provision made by the 9th section of the act of 1799, ch. 79, and that he is authorized to take the bill pro confesso, although he has also by the terms of the act a power to issue a commission. Under the act of 1795, ch. 88, after a publication against an absent defendant, and after the expiration of Hie time limited, he might, at any time before a decree, appear in person or by a solicitor, on which the same proceedings were to take place as if lie had regularly appeared. This privilege occasioned an unreasonable delay; because it was easy for the absent defendant to appear by his solicitor, and he could not he brought in by ah attachment for want *127 of an answer. The act of 1799, appears to have provided a remedy for this inconvenience, — the 9th section, relating to defendants appearing agreeably to an Order, limiting a day for such appearance, which is done by the order of publication. An appearance was entered for the defendant at July term, but no answer has been put in. It is urged by the counsel for the defendant, that the bill ought not to be taken pro cmfesso, but that a commission should be issued, under which payments of a part of the mortgage debt might be proved. But it was in the power of the defendant to put in his answer alleging such payments, on which an opportunity would, of course, have been given for the proof of them by commission, or before the auditor. There is nothing to shew, that it is essential to the justice of the case, that a commission should be issued, or. even that it should be put before the auditor, the claim being prima fade established by the mortgage, and the affidavit of the complainant.* But in order that injustice may not be done to the defendant, inasmuch as the time usually limited for bringing in the money due in such case will go beyond the sitting of December term, the decree is made not to be absolute until the 10th day of that term, during which, on sufficient cause being shewn, such alteration maybe made as shall then appear necessary. Decreed, that the properly in the proceedings mentioned be sold, &c. _
Hepburn v. Mollinson. — The defendants, having been summoned, had failed to appear, upon which the plaintiff obtained an interlocutory decree, in,the usual form, under the act of 1820, on the 14th of July 1821. After which, on motion by the defendants, Caleb D. Goodwin and others, to appear and to have the interlocutory decree rescinded—
18th July, 1821, — Kilty, Chancellor, — Ordered, That the decree be rescinded, together with the order for the commission. This order is made under the general power of the court, being the same term; and not on the third section of the act of 1820, ch. 161, which may apply where the term is past. An answer is not therefore required with the appearance, but the suit will stand as if an appearance had been entered in the usual way.

 It appears that the plaintiff’s affidavit of the sum due, in the usual form, made before a justice of the peace, was endorsed on the mortgage.

 Robson v. Cranwell, 1 Dick. 61.

 Stanard v. Rogers, 4 Hen. &. Mun. 438; Erwin v. Vint, 6 Mun. 267.

 Wooster v. Woodhull, 1 John. C. C. 539.

 November, 1787, ch. 9, s. 6.